**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| THE ESTATE OF SARAH HOWARD and JOSEPH L. NELSON | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| | ) | Civil Action No. 24-CV-10859-AK |
| v. | ) ) | |
| SELECT PORTFOLIO SERVICING, INC. and FREDDIE MAC | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

**ANGEL KELLEY, D.J.**

Plaintiff Joseph L. Nelson, son of decedent Sarah Howard and personal representative of her estate, brings this action against Select Portfolio Servicing, Inc. ("SPS") and Freddie Mac following the foreclosure and sale of his mother's former residence at 65 Reed Street, Randolph, Massachusetts (the "Property"). Nelson wants to buy the Property and brought claims for: (1) injunctive relief; (2) breach of contract and specific performance; (3) breach of the covenant of good faith and fair dealing; and (4) lis pendens, alleging that SPS approved his proposed purchase of the Property but nevertheless conducted a defective foreclosure sale. The Defendants removed the case from Massachusetts Superior Court and filed an unopposed Motion for Summary Judgment [Dkt. 20] on all claims, asserting that the foreclosure complied with all

statutory and contractual requirements, any equitable relief is moot, and no binding sale contract

existed between Nelson and SPS.  For the reasons below, the unopposed Motion is **GRANTED.**

## I.      BACKGROUND

Howard acquired the Property by quitclaim deed on March 24, 1999, and on that same

day in 2012 executed a $206,143 promissory note and mortgage in favor of Bank of America,

N.A. ("BOA") as security for the debt.  [Dkt. 12 at 3].  Howard died intestate on May 17, 2020,

and after, the loan went into default for failure to make the August 1, 2020 payment and all

subsequent installments.  [Id.].  BOA assigned the mortgage to SPS on January 6, 2021.  [Id. at

3–4].  Six heirs survived Howard [Dkt. 16 at 12 ¶¶ ¶ 11-12], and on January 19, 2021, her son

Joseph Nelson was appointed personal representative of the estate.  [Dkts. 12 at 4; 16 at 12

¶¶13].  Nelson negotiated to purchase the Property with SPS's initial approval.[1]  [Dkt. 16 at 12

¶¶ ¶ 11-12], but his ability to secure all necessary heir assents was delayed by the death of one

heir in March 2023 and ongoing probate proceedings [Dkt. 16 at 12 ¶¶ 15–20].

On October 4, 2023, SPS served Nelson with a notice of intent to foreclose under G.L. c.

244, § 14 and published its notice of sale in The Patriot Ledger on October 5, 12, and 19, 2023.

[Dkt. 12 at 4 ¶¶ 9–10].  Although originally scheduled for November 1, the sale was postponed

and held on November 8, 2023, at which time the outstanding debt totaled $242,236.87.  [Id. ¶¶

11–13].  A third-party, Maria Mainini, submitted the highest bid and executed a sale contract that

day [Id. ¶ 14], but SPS released that buyer from the contract on January 8, 2024, because of

Nelson's pending litigation.  SPS then contracted with the fourth-highest bidder, Dejahn

Renwick, who assigned his bid to IL Investments LLC, who in turn secured the Property with a

$10,000 deposit and closed the purchase for $345,000 on March 22, 2024.  [Id. ¶¶ 18–22].

---

[1] Based on Nelson's memorandum, it is unclear when this occurred, and he does not include any documents to support this statement.

Nelson filed suit in Superior Court on December 15, 2023, seeking to set aside the sale. [Id. at 4–5 ¶ 15]. The Superior Court denied his motions for a temporary restraining order and lis pendens on January 22, 2024, for lack of jurisdiction. Nelson refiled in Massachusetts Land Court ("Land Court") on March 11, 2024; on April 3, 2024, defendants removed the case here and Nelson filed new motions for lis pendens and a temporary restraining order. [Dkts. 7; 10]. This Court denied those motions on September 13, 2024. [Dkt. 18]. Defendants then filed their unopposed summary judgment motion on October 21, 2024, arguing that the foreclosure was properly executed, Nelson's requested relief is moot, and no binding contract existed.

## II.     LEGAL STANDARD

Summary judgment serves "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). Under Federal Rule of Civil Procedure 56(a), the moving party must show there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under the governing law, and a dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the movant meets this burden, the nonmoving party must point to specific evidence demonstrating a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court views the record in the light most favorable to the nonmovant and draws all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). In the absence of any opposition, the court may accept the defendants' factual assertions as undisputed. See Fed. R. Civ. P. 56(e).

## III.    DISCUSSION

Defendants move for summary judgment on each of the Plaintiffs' claims.

### A.  Breach of Contract and Specific Performance

Nelson contends that he entered into a valid purchase agreement with the Estate and that SPS breached that agreement by refusing a customary extension following his sister's death.  He asks the court to enforce the sale ("specific performance") and give him time to resolve his sister's estate so he can close.  In moving for summary judgment, the Defendants argue that Nelson's contract claim fails as a matter of law because the alleged purchase agreement was between him and the Estate - not with SPS or Freddie Mac, and since neither SPS nor Freddie Mac were parties to the agreement, they cannot be held liable for any alleged breach.

To state a claim for breach of contract under Massachusetts law, a plaintiff must show: (1) an agreement between the parties, (2) consideration, (3) readiness and ability to perform, (4) breach by the defendant, and (5) resulting harm.  Bulwer v. Mount Auburn Hosp. 473 Mass. 672, 690, 46 N.E.3d 24 (2016).  Specific performance likewise requires a valid and enforceable contract between the parties.  Cangrade, Inc. v. Paylocity Corp., 731 F. Supp. 3d 161, 165 (D. Mass. 2024).

Here, however, any alleged purchase agreement was made with the Estate, not with SPS or Freddie Mac.  Because neither defendant was a party to the purported contract, they cannot be liable for its breach, and Nelson's claims for breach of contract and specific performance fail as a matter of law.  See Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992).

### B.  Breach of the Covenant of Good Faith and Fair Dealing

Nelson also invokes the implied covenant of good faith and fair dealing, arguing that SPS acted unfairly by declining a short, reasonable delay and proceeding with foreclosure.  [Dkt. 16

at 13-18]  As before, the Defendants assert this claim is also invalid because SPS and Freddie

Mac did not contract with Nelson.  [Dkt. 14 ¶ 26].

The covenant of good faith & fair dealing is implied in every contract under

Massachusetts law.  Kerrigan v. City of Boston, 361 Mass. 24, 33, 278 N.E.2d 387 (1972)

(citing Clark v. State Street Trust Co., 270 Mass. 140, 152–53, 169 N.E. 897 (1930)).  However,

the covenant does not "create rights and duties not otherwise provided for in the existing

contractual relationship, as the purpose of the covenant is to guarantee that the parties remain

faithful to the intended and agreed expectations of the parties in their performance."  Uno

Restaurants, Inc v. Boston Kenmore Realty Corp., 441 Mass. 376, 385, 805 N.E.2d 957 (2004).

Said differently, this covenant exists only within the confines of an enforceable contract and does

not create independent duties.  See Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 385

(2005).

Here, because Nelson cannot show any contractual relationship with SPS or Freddie Mac,

no duty to act in good faith arose, and this claim likewise lacks legal basis.

## C.  Lis Pendens

Nelson seeks a lis pendens to prevent any transfer of the Property.  However, this Court

already ruled that neither Nelson nor the Estate had a present claim to title or use of the Property

at the time the Land Court complaint was filed on March 11, 2024.  See Est. of Howard v. Select

Portfolio Servicing Inc., No. 24-CV-10859-AK, 2024 WL 5442370, at *3 (D. Mass. Sept. 13,

2024).  Nelson has presented no new evidence, arguments, or a motion for reconsideration that

would warrant revisiting this issue.  Accordingly, his request for a lis pendens is **DENIED**.

### D. Injunctive Relief

Nelson also seeks to enjoin the transfer of the Property and compel its sale to him.  This Court has already denied his request for injunctive relief, see Est. of Howard, 2024 WL 5442370, at \*5, concluding that he failed to demonstrate a likelihood of success on the merits or irreparable harm.  Again, Nelson has provided no new evidence, arguments, or opposition to this motion that would justify reconsideration.  The foreclosure sale is complete, rendering this claim moot.  Therefore, his request for a permanent injunction must be **DISMISSED**.

## IV.    CONCLUSION

No genuine dispute of material fact remains, and Nelson's claims against SPS and Freddie Mac fail as a matter of law.  The Defendants' unopposed Motion for Summary Judgment [Dkt. 20] is **GRANTED** in full.  Judgment shall enter for the defendants on all counts.

**SO ORDERED.**

Dated: August 1, 2025                                              /s/ Angel Kelley_____
                                                                             Hon. Angel Kelley
                                                                             United States District Judge

6